CESSNA AIRCRAFT
COMPANY, Plaintiff,

v.

DEPARTMENT OF the
NAVY, Defendant.

Civ. A. No. 89–1134–T.

United States District Court,
D. Kansas.

Aug. 13, 1990.

---

MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. 6), defendant's motion to dismiss plaintiff's supplemental complaint for lack of subject matter jurisdiction (Doc. 47), defendant's motion to dismiss or, in the alternative, to transfer to the Claims Court (Doc. 55), and plaintiff's motion to strike defendant's transfer motion (Doc. 57). The court does not believe oral argument would be of material assistance in deciding these motions and denies the parties' requests for argument.

Plaintiff Cessna Aircraft Company (Cessna) filed this action for judicial review under section 10 of the Administrative Proce-

dure Act, 5 U.S.C. § 702, seeking a declaration that the defendant's exercise of an option under an allegedly expired contract between the parties violated the Anti–Deficiency Act, 31 U.S.C. §§ 1341–1342, 1511–1519. Plaintiff alleged jurisdiction over the subject matter under 28 U.S.C. § 1331, alleging that this action arises under the laws of the United States, namely the Anti–Deficiency Act, 31 U.S.C. §§ 1341–1342, 1349–1351, 1511–1519; the Armed Services Procurement Act, 10 U.S.C. § 2301–2314; and the Administrative Procedure Act, 5 U.S.C. § 551–706. Plaintiff seeks judicial review under the Administrative Procedure Act and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Plaintiff's complaint, Doc. 1, ¶¶ 1, 4.

The parties' dispute arises out of a contract awarded by the Naval Air Systems Command of the defendant Department of the Navy (the Navy) to Cessna, requiring Cessna to provide flight training services for undergraduate naval flight officers during five program years, from August 1, 1983 through September 30, 1988. The contract contained an option provision allowing the Navy to extend the contract for an additional term of three years, commencing October 1, 1988 and ending September 30, 1991. On October 1, 1988, the contracting officer signed a modification to the contract, stating that the Navy was exercising the three year option, but was funding only the first year in the amount of $22,576,253. October 1, 1988, a Saturday, was not a regular business day for either Cessna or the Navy. Cessna received a copy of the contract modification on Monday, October 3, 1988. Doc. 1, ¶¶ 5–23.

Cessna advised the Navy by letter dated October 7, 1988, that the Navy had not validly exercised the option and that neither the original contract nor the three year extension pursuant to the option were in effect. Cessna agreed to continue providing services contingent on the negotiation of a new contract to cover the services which would have been covered by the option provision of the contract. By letter dated December 5, 1988, Cessna submitted to the Navy its price proposal for a new contract to cover the services being provided. By letter dated December 7, 1988, the Navy advised Cessna that the option had been effectively exercised and that the contract remained in effect. Doc. 1, ¶¶ 24–25.

Cessna alleges that the availability of all fiscal year (FY) 1988 funds expired as of midnight, September 30, 1988, and no funds had been appropriated for the 1989 fiscal year as of that date. Cessna alleges that in the absence of new funding, the contract expired on September 30, 1988 and the exercise of the option on October 1, 1988 was invalid. Doc. 1, ¶¶ 27–28. Cessna also alleges that the contract modification used to exercise the option was issued prior to FY 1989 appropriations being allocated, rendering the modification invalid. *Id.* ¶ 30. Cessna also alleges that the option involved the government in a contract for the payment of money in advance of appropriations and without authorization, rendering the modification invalid. *Id.* ¶ 32. Cessna alleges the option obligated the government to pay up to $29,000,000 in cancellation charges if the second and third option years were not exercised. Cessna asserts that the cancellation charges constituted an obligation of the government in advance of appropriations, rendering the exercise of the option invalid. *Id.* ¶¶ 34–35. Cessna asserts that the exercise of the option was untimely, arbitrary, capricious, an abuse of discretion, and otherwise contrary to law. *Id.* ¶¶ 37–39. Cessna prays for a declaration that the Navy's purported exercise of the option was invalid and that the contract has expired. *Id.* at p. 15.

Cessna filed a supplemental complaint (Doc. 49) based on additional agency action taken subsequent to the filing of the original complaint. Under the contract and regulations, the contracting officer was required to notify Cessna of the availability of funds sufficient for performance of the second option year (FY 1990) by October 1, 1989. On October 1, 1989, the contracting officer issued a notice of availability of funds. Cessna alleges that at the time the Navy issued its notice, funding was not in fact available. Doc. 49, ¶¶ 1–12. Cessna prays for additional relief in the form of a

declaration that the Navy's notice of funds availability for FY 1990 was invalid and that the contract was cancelled as of September 30, 1989, as a result of the Navy's failure to timely notify Cessna of the availability of FY 1990 funding. *Id.* at pp. 7–8.

Defendant's motion to dismiss (Doc. 6) and motion to dismiss the supplemental complaint (Doc. 47) raise the same issues regarding subject matter jurisdiction. Defendant's motion to dismiss or transfer (Doc. 55) raises no new jurisdictional arguments, but does assert that this action should be transferred to the Claims Court pursuant to 28 U.S.C. § 1631. Section 1631 provides in relevant part:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed....

28 U.S.C. § 1631. Thus, if the court finds jurisdiction lacking, the court may transfer this action to the Claims Court if this action could have been brought there originally. Only one issue is presented by the several motions: whether this action is, in actuality, a contract action which must be brought in the Claims Court pursuant to the Tucker Act.

Under the Tucker Act, the United States has waived its sovereign immunity for certain claims for money damages by conferring jurisdiction on the Claims Court, and in certain cases on the district courts, to hear these cases. *Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818, 823 (10th Cir.1981). The Tucker Act provides in relevant part:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliq-

uidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

Pursuant to 28 U.S.C. § 1346, the district courts have concurrent jurisdiction with the Claims Court in suits against the United States when the amount in controversy does not exceed $10,000. *See Amalgamated Sugar,* 664 F.2d at 818. Section 1346 provides in relevant part:

> The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:
>
> . . . .
>
> Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978.

28 U.S.C. § 1346(a)(2). The Claims Court, therefore, has exclusive jurisdiction when the amount in controversy in such an action exceeds $10,000. *Colorado Department of Highways v. United States Department of Transportation,* 840 F.2d 753, 755 (10th Cir.1988); *Rogers v. Ink,* 766 F.2d 430, 433 (10th Cir.1985); *United States v. City of Kansas City, Kansas,* 761 F.2d 605, 607–07 (10th Cir.1985); *Amalgamated Sugar,* 664 F.2d at 818.

The government argues that the exception contained in section 1346(a)(2) applies and divests the court of jurisdiction. The government's argument is that the exception provision removes all cases founded on contracts subject to the Contract Disputes Act regardless of whether money damages are sought or whether the complaint alleges violations of the Constitution, statutes, or regulations. Cessna argues that the

exception provision applies only if jurisdiction is founded initially on section 1346(a)(2). The court agrees with Cessna that the proviso contained in section 1346(a)(2) restricts only the jurisdiction that is granted in the first part of section 1346(a)(2), e.g., a contract action seeking damages not exceeding $10,000. *See North Side Lumber Co. v. Block*, 753 F.2d 1482, 1486 (9th Cir.), *cert. denied*, 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985).

The court must determine whether this action is properly before the court or whether the action should have been brought in the Claims Court under the Tucker Act. The Tenth Circuit follows a three part test for determining whether jurisdiction lies in the Claims Court:

> Exclusive jurisdiction therefore rests in the Claims Court if three conditions are satisfied: (1) the action is against the United States; (2) the action seeks monetary relief in excess of $10,000; and (3) the action is founded upon the Constitution, federal statute, executive regulation, or government contract.

*Rogers v. Ink*, 766 F.2d at 433; *see also Colorado Department of Highways*, 840 F.2d at 755. It is undisputed that the action is against the United States. Thus, the court must consider whether the action seeks monetary relief in excess of $10,000 and whether the action is founded upon a government contract.

■ When the "prime objective" or "essential purpose" of the plaintiff is to obtain money from the federal government in an amount in excess of $10,000, the exclusive jurisdiction of the Claims Court is triggered. *State of New Mexico v. Regan*, 745 F.2d 1318, 1322 (10th Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985); *see also Colorado Department of Highways*, 840 F.2d at 755; *Rogers v. Ink*, 766 F.2d at 434. The exclusive jurisdiction of the Claims Court cannot be avoided by framing a complaint that seeks only injunctive, mandatory, or declaratory relief against government officials, when the purpose of the suit, directly or indirectly, is to obtain money from the United States in excess of $10,000. *Colo-*

*rado Department of Highways*, 840 F.2d at 755; *Rogers v. Ink*, 766 F.2d at 434; *State of New Mexico v. Regan*, 745 F.2d at 1322; *Amalgamated Sugar*, 664 F.2d at 824; *Alamo Navajo School Board, Inc. v. Andrus*, 664 F.2d 229, 233 (10th Cir.1981), *cert. denied*, 456 U.S. 963, 102 S.Ct. 2041, 72 L.Ed.2d 487 (1982). The Federal Circuit, which will hear any appeal arising from the court's ruling on the motion to transfer (*see infra*) follows the same test:

> It is well settled that where the prime effort of the plaintiff is to obtain money from the Government, the exclusive jurisdiction of the Claims Court cannot be avoided by drafting a complaint which appears to seek only injunctive, mandatory, or declaratory relief against the Government.

*Chula Vista City School District v. Bennett*, 824 F.2d 1573 (Fed.Cir.1987).

■ The court now turns to Cessna's complaint. Cessna seeks only declaratory relief in its complaint and supplemental complaint. The court's inquiry does not end here, however. The Tenth Circuit has held in a series of cases that claims pleaded as injunctive or declaratory claims were actually claims for money damages. *See Eagle–Picher Industries, Inc. v. United States*, 901 F.2d 1530 (10th Cir.1990) (action to enjoin the suspension and resolicitation of a government contract); *Colorado Department of Highways v. United States Department of Transportation*, 840 F.2d 753 (10th Cir.1988) (action challenging the accounting method used to calculate governmental reimbursement of highway construction costs); *Rogers v. Ink*, 766 F.2d 430 (10th Cir.1985) (action challenging a decision not to fund local antipoverty organizations); *United States v. City of Kansas City, Kansas*, 761 F.2d 605 (10th Cir. 1985) (action to enjoin the denial of a federal grant); *Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818 (10th Cir.1981) (action for declaration of eligibility for the continuation of agricultural loans); *Alamo Navajo School Board, Inc. v. Andrus*, 664 F.2d 229 (10th Cir.1981), *cert. denied*, 456 U.S. 963, 102 S.Ct. 2041, 72 L.Ed.2d 487

(1982) (action to compel the payment of government funds).

The court must examine what would occur if the plaintiff were to prevail on the merits of its claim. If the practical effect of a favorable judgment would be that Cessna was' indirectly entitled to monetary relief, or would experience monetary gain, the action should have been brought in the Claims Court, *see Eagle–Picher Industries, Inc. v. United States*, 901 F.2d at 1533, assuming that the action is one within the Claims Court's jurisdiction. A declaration that no contract was formed by the Navy's exercise of the option would entitle Cessna to monetary relief. If Cessna prevails, it would be entitled to damages for the Navy's wrongful exercise of the option (i.e., for breach of contract).

That a suit for nonmonetary relief may later be the basis for an award of damages against the United States does not deprive the court of jurisdiction. *Hahn v. United States*, 757 F.2d 581, 589 (3d Cir.1985); *Tennessee ex rel. Leech v. Dole*, 749 F.2d 331, 336 (6th Cir.1984), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985); *Minnesota v. Heckler*, 718 F.2d 852, 858 (8th Cir.1983); *Laguna Hermosa Corp. v. Martin*, 643 F.2d 1376, 1379 (9th Cir.1981). If the declaratory or injunctive relief sought "has significant prospective effect or considerable value apart from merely determining monetary liability of the government," the district court may take jurisdiction over the nonmonetary claims. *Minnesota v. Heckler*, 718 F.2d at 858; *see Hahn v. United States*, 757 F.2d at 590. This court believes the Tenth Circuit would adopt this rule. *See Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818 (10th Cir.1981) (when declaratory claim failed to present a case or controversy, action was one seeking monetary relief).

▪ In the present action, the declaratory relief sought will not have significant prospective effect or considerable value apart from determining that the government is liable in monetary damages for the wrongful exercise of the option. It will have no real impact beyond this case as it involves the specific exercise of an option

to extend a specific contract. The only effect of the declaration sought by plaintiff would be to excuse performance under the contract. *Cf. Minnesota v. Heckler*, 718 F.2d at 859 (prospective declaratory relief regarding federal financial participation under the Medicaid program "has conspicuous impact beyond establishing a right to the [past] disallowed funds"); *Hahn v. United States*, 757 F.2d 581 (court did not expressly address issue; declaratory and injunctive relief against the denial of constructive service credit for members of the Public Health Service Commissioned Corps would have impact beyond the back pay sought by plaintiff). Further, given the delays inherent in litigation, the declaratory claim may become moot before the action reaches a final resolution.

The present case is similar to *Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818 (10th Cir.1981). In *Amalgamated Sugar*, two sugar companies sought a declaration that their sugar was eligible for a government loan program. The plaintiff sugar companies then hoped to use that declaration that their sugar was eligible for the loan program to recover certain storage payments which they believed were due them under the loan program. 664 F.2d at 822. The Tenth Circuit held that plaintiffs' claim was a disguised claim for a money judgment and was within the Claims Court's exclusive jurisdiction. *Id.* at 823–24. Similarly, the declaration Cessna seeks would be the first step toward an award of damages. The court finds that plaintiff's claim is a disguised claim for money damages.

The classification of a particular action as one which is or is not a contract action depends "both on the source of the rights upon which the plaintiff bases its claim, and upon the type of relief sought (or appropriate)." *Ingersoll–Rand Co. v. United States*, 780 F.2d 74, 76 (D.C.Cir.1985) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C.Cir.1982)). This is a question that "may be resolved only against the facts of each case." *Id.* at 77 (quoting *Megapulse*, 672 F.2d at 970).

Cessna did not plead its case as an action for breach of contract. That its complaint does not mention breach of contract is not sufficient to establish district court jurisdiction. The court must examine other factors. *Id.* at 77–78. First, this action may be viewed as entirely contained within the terms of the contract, *see id.* at 78; i.e., the untimely or otherwise improper exercise of the option as well as the failure to notify Cessna of the availability of funds for performance of the second option year. Second, the issues raised by the complaint are within the Claims Court's expertise. *Id.* The complaint alleges that the Navy improperly extended the contract. This "calls for knowledge of the government contracting process." *Id.* Third, this action differs from a bid protest action. In a bid protest action, the unsuccessful bidder seeks to void the award of the contract to another contractor. The unsuccessful bidder has no contract upon which to sue the government. *Id.* at 78–79. An action seeking to prevent the government from declaring a contractor in breach of an existing contract and excusing further performance is an action arising under the contract. *See S.J. Groves & Sons, Co. v. United States,* 495 F.Supp. 201 (D.Colo.1980).[1]

Next the court must examine not only the type of relief sought by the plaintiff but the type of relief appropriate. *Ingersoll–Rand,* 780 F.2d at 79. Plaintiff may not avoid the jurisdiction of the Claims Court by seeking only injunctive or declaratory relief. *See supra* pp. 263–264. That plaintiff did not seek monetary relief is not determinative. Monetary relief would be entirely appropriate here. If the Navy has wrongfully exercised the option to extend the contract with Cessna, money damages would afford the appropriate remedy.

To summarize, despite the ingenuity of plaintiff's pleading, alleging the controversy to be noncontractual and to involve administrative regulations and budgetary statutes, the court believes the factual basis of the controversy to be the terms of the contract and the application of statutes or regulations concerning contracts with the United States. Obviously the amount in controversy—millions of dollars—greatly exceeds the Tucker Act maximum upon which federal district court jurisdiction may be based. Therefore, the court concludes that the present action is founded upon an express contract with the government. Plaintiff's claim is a disguised claim for money damages in an amount in excess of $10,000. This court, therefore, lacks jurisdiction. The court must next determine whether transfer is appropriate.

Defendant moves to transfer pursuant to 28 U.S.C. § 1631, which allows the court to transfer this action to the Claims Court if it could have been brought there originally. Since the court has concluded that this action lies within the Claims Court's exclusive jurisdiction, it should have been brought in the Claims Court originally. While the Navy notes that Cessna's complaint may be subject to dismissal in the Claims Court because Cessna has not filed a properly certified claim for a fixed sum of money, the court believes that transfer is in the interest of justice. 28 U.S.C. § 1631. Plaintiff should not be allowed to avoid the Claims Court's exclusive jurisdiction through its purposeful failure to comply with the jurisdictional prerequisites to suit.

Cessna has moved to strike the Navy's transfer motion. Under 28 U.S.C. § 1292(d)(4)(A), the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction of an appeal from an interlocutory order granting or denying a motion to transfer an action to the Claims Court under section 1631. The statute further provides that when a motion to transfer to the Claims Court is filed, all proceedings in the district court shall be stayed until 60 days following ruling on the motion. If an appeal is taken from the district court's grant or denial of the motion to transfer, proceedings shall be stayed until the appeal has been decided by the Federal Circuit. *Id.* § 1292(d)(4)(B).

Cessna's unstated goals are to prevent a stay of proceedings during the pendency of the transfer motion and any interlocutory

---

**1.** The Tenth Circuit has recently cited this case as authority. *See Eagle-Picher Industries, Inc. v.* *United States,* 901 F.2d 1530, 1533 (10th Cir. 1990).

appeal to the Federal Circuit. An immediate appeal to the Federal Circuit will answer whether this action was properly before this court or whether this action should be proceeding before the Claims Court. This court will be spared the time and effort of proceeding through trial to judgment, which would be wasted if on appeal the Tenth Circuit rules that this court lacked subject matter jurisdiction. The Navy's motion to transfer is not sanctionable and should not be stricken. Cessna's motion to strike shall be denied.

IT IS BY THE COURT THEREFORE ORDERED that the defendant's motions to dismiss (Doc. 6, 47, 55) are hereby denied.

IT IS FURTHER ORDERED that the defendant's motion to transfer (Doc. 55) is hereby granted. This action is hereby transferred to the United States Claims Court.

IT IS FURTHER ORDERED that plaintiff's motion to strike (Doc. 57) is hereby denied.