**Zelma WEINFIELD, Plaintiff–Appellant,**

v.

**UNITED STATES of America, et al., Defendant–Appellee.**

**No. 91–16835.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1993.

Decided Nov. 4, 1993.

---

Hugo Gerstl, Gerstl & Gorman, Monterey, CA, for plaintiff-appellant.

Barbara C. Biddle, Sushma Soni, U.S. Dept. of Justice, Washington, DC for defendant-appellee.

Before CANBY, and BRUNETTI, Circuit Judges, and JONES * District Judge.

CANBY, Circuit Judge:

Zelma Weinfield appeals the district court's summary judgment in favor of the United States in her action challenging the calculation of benefits she receives under the Survivor Benefit Plan ("SBP"). We review de novo, *United States v. Hatcher*, 922 F.2d 1402, 1405 (9th Cir.1991), and we affirm.

## I. Factual & Procedural Background

In 1972, Congress created the SBP to provide income to the surviving spouses of members of the military services who die after becoming eligible to retire. S.Rep. No. 92–1089, 92d Cong., 2d Sess. 1, *reprinted in* 1972 U.S.C.C.A.N. 3288, 3289. Weinfield is the widow of a military serviceman who participated in the SBP. Accordingly, Weinfield

---

* The Honorable Robert E. Jones, United States District Judge for the District of Oregon, sitting by designation.

has received an SBP annuity since her husband's death in 1989. Pursuant to 10 U.S.C. § 1451(e)(3)(A) ("the Social Security offset"), the government reduces her annuity payments by the amount of Social Security survivor benefits to which she would be entitled on the basis of her husband's military earnings. Weinfield, however, is not actually eligible to receive Social Security survivor benefits because she receives Social Security old-age benefits based on her own employment earnings.[1] The government applies the Social Security offset to Weinfield despite the fact that she is ineligible to receive Social Security survivor benefits.

In her complaint, Weinfield alleged that (1) the Social Security offset does not apply to her because she is not actually eligible to receive Social Security survivor benefits; (2) the reduction of her SBP annuity constitutes a breach of a contract between the government and her husband; (3) the government should be equitably estopped from applying the offset to her; and (4) the application of the Social Security offset deprives her of due process and equal protection of the law. The district court granted the government's motion for summary judgment, and this appeal followed.

## II. The Social Security Offset

▮ Weinfield contends that the Social Security offset does not apply to her because she is not actually entitled to Social Security survivor benefits based on her husband's military service. We reject that contention.

The Social Security offset provides that the SBP annuity shall be reduced by "the amount of the survivor benefit, if any, to which the widow or widower or former spouse would be entitled under title II of the Social Security Act (42 U.S.C. 401 et seq.) based solely upon service by the [deceased military retiree.]" 10 U.S.C. § 1451(e)(3)(A) (Supp. IV 1992). This court has not yet considered whether this provision applies to

a person, like Weinfield, who is ineligible for Social Security survivor benefits because she receives old-age benefits. This precise issue, however, was decided by the Tenth Circuit in *Miller v. McGovern*, 907 F.2d 957 (10th Cir. 1990), *cert. denied*, 498 U.S. 1082, 111 S.Ct. 952, 112 L.Ed.2d 1040 (1991). *Miller* held that the government's application of the Social Security offset to a person in Weinfield's situation accorded with both the language and the legislative history of the statute. *Id.* at 961–62. *Miller* explained:

The critical language in the statute is "would be entitled" and "based solely upon the service by [the deceased spouse]." Under Title II of the Social Security Act, a person is not ordinarily entitled to survivor benefits if the person's own old-age benefits exceed the amount of the survivor benefits. However, solely for the purpose of determining the amount of the offset, the statute mandates that the amount be determined by looking to the Social Security survivor benefit that "would be" payable to the surviving spouse based on the military service of the decedent. The statute says that the SBP annuity shall be reduced by the amount of the Social Security survivor benefit to which the spouse "would be entitled" resulting from the military service of the decedent. "Would be entitled" is not the equivalent of "is entitled" and the former is sufficiently broad to include the situation where a person would otherwise be entitled to a Title II survivor benefit but because of the triggering of another statutory provision will not actually be eligible to receive, nor will he, or she, actually receive payment of the benefit. The Social Security offset is concerned with how the offset will be calculated, not the actual entitlement for Title II survivor benefits.

We believe the meaning which we find in 10 U.S.C. § 1451(e)(3) is consistent with legislative history. The Senate Report

---

1. Under Title II of the Social Security Act, a person may be entitled to both old-age benefits and survivor benefits. 42 U.S.C. §§ 402 *et seq.* Such a person does not receive the aggregate of both types of benefits, however. Instead, the amount of the monthly survivor benefit is reduced, but not to less than zero, by the amount of the monthly old-age benefit. 42 U.S.C. § 402(k)(3)(A) (1988). In effect, therefore, such a person receives only the single greater amount of the two types of benefits. Weinfield receives old-age benefits based on her own earnings because these benefits exceed the amount of survivor benefits to which she would be entitled.

prepared by the Armed Services Committee, under the heading of "Rationale for Including Social Security Offset in Survivors Benefit Plan," states that "the proposed survivor benefit program is designed to build upon the income-maintenance foundation of the social security system. Thus, the benefits are integrated with social security benefits." S.Rep. No. 92–1089, 92 Cong., 2nd Sess. 29, *reprinted in* 1972 U.S.Code Cong. and Admin.News 3288, 3304. The Senate Committee then illustrated the actual effect of the offset provision to an SBP beneficiary, stating that "when a widow reaches age 62, her [SBP] annuity based on her husband's military retirement pay would be offset by the equivalent of the Social Security payment which is *attributable to her husband's military service.*

*Id.* (emphasis in original).

We agree with *Miller*'s exposition of the language and purpose of the Social Security offset. Accordingly, we reject Weinfield's argument that section 1451(e)(3)(A) does not apply to her because she is ineligible to receive Social Security survivor benefits based on her husband's military service.

### III. Contract Claim

■ Weinfield next asserts that a contract existed between her husband and the government, and that the government breached this contract by applying the Social Security offset to her SBP annuity. The district court found that a contract exists between the government and the service members who participate in the SBP, but ruled that the terms of the contract are provided by statute. Hence, because the district court ruled

that the Social Security offset applied to Weinfield, the court found no breach of the contract.[2] We disagree with the district court's conclusion that a contract exists between the government and service members who participate in the SBP.

"[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465–66, 105 S.Ct. 1441, 1451, 84 L.Ed.2d 432 (1985) (quoting *Dodge v. Board of Educ.*, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937)). "In determining whether a particular statute gives rise to a contractual obligation, 'it is of first importance to examine the language of the statute.'" *Id.* 470 U.S. at 466, 105 S.Ct. at 1452 (quoting *Dodge*, 302 U.S. at 78, 58 S.Ct. at 100).

The district court decided Weinfield's contract claim without analyzing the language of the statutes that govern the SBP. Indeed, the only reasons the district court offered to support its conclusion that a contract existed were that: (1) the SBP is a voluntary program in which a service member can choose to participate; (2) the payments that Weinfield's husband made to the SBP were sufficient to constitute valuable consideration. Standing alone, these factors are not adequate to overcome the strong presumption that a federal statute does not create private contractual rights. Moreover, Weinfield has not attempted to demonstrate that the language of the statutes governing the SBP gives rise to contractual obligations.[3] Be-

---

**2.** Although Weinfield pleaded a contract claim, we conclude that the district court had jurisdiction under 28 U.S.C. § 1331. *See North Side Lumber Co. v. Block*, 753 F.2d 1482, 1486 (9th Cir.) (even when contract claims are alleged, the district court has jurisdiction under 28 U.S.C. § 1331 if "the claim is not 'founded upon a contract' within the meaning of [28 U.S.C.] § 1346(a)(2), but rather is based upon extra-contractual statutory obligations"), *cert. denied*, 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985). In light of the district court's ruling that the terms of the contract are provided by statute, we agree with the government's argument that

the court's jurisdiction was based on section 1331.

**3.** Instead, Weinfield argues that the government explained the terms of the contract to her husband "in the form of brochures and pamphlets." Because these materials were not presented to the district court and therefore are not part of the record on appeal, we cannot consider them. *See, e.g., Kirshner v. Uniden Corp. of America*, 842 F.2d 1074, 1077 (9th Cir.1988) ("[p]apers not filed with the district court or admitted into evidence by that court are not part of the clerk's record and cannot be part of the record on appeal").

cause Weinfield has not shown that Congress intended the SBP to create contractual obligations, we conclude that the district court erred by ruling that a contract existed between the government and Weinfield's husband. Nevertheless, this error did not affect the judgment,[4] which we accordingly affirm.

## IV. Equitable Estoppel

 Weinfield argues that the government should be equitably estopped from applying the Social Security offset to her. A private party seeking estoppel against the government must establish that: (1) "affirmative misconduct going beyond mere negligence" has occurred; (2) "the government's wrongful act will cause a serious injustice[;]" and (3) "the public's interest will not suffer undue damage by imposition of the liability." *Morgan v. Heckler,* 779 F.2d 544, 545 (9th Cir. 1985) (citations omitted).

Weinfield's argument that the government should be estopped from applying the Social Security offset to her is premised on the enactment and subsequent repeal of the "Thurmond Amendment." This amendment would have eliminated the Social Security offset for a person, like Weinfield, who receives Social Security benefits based on her own earnings. Department of Defense Authorization Act, 1985, Pub.L. No. 98-525, § 641, 98 Stat. 2492, 2545 (1984). Because the Thurmond Amendment was repealed in 1985 before its effective date, Congress allowed service members who had decided to participate in the SBP because of the Thurmond Amendment to withdraw from the program. Department of Defense Authorization Act, 1986, Pub.L. 99-145, § 711(b) & (c), 99 Stat. 583, 670 (1985). Weinfield's husband, however, began participating in the SBP in 1972 and thus could not have relied on the aborted Thurmond Amendment. Because Weinfield failed to offer any evidence of affirmative misconduct by the government, we conclude that the district court correctly rejected her request for equitable relief.

## V. Constitutional Claims

Finally, Weinfield asserts that the Social Security offset deprives her of due process and equal protection of the law. Weinfield's due process argument rests on the alleged abrogation by the government of its contract with service members who contributed to the SBP. This argument is unavailing because, as we already have discussed, no such contract exists.

Weinfield's equal protection claim also fails. Because she has not shown that the Social Security offset "employs a classification that is inherently invidious or that impinges on fundamental rights," we review the statute to determine whether it "classif[ies] the persons it affects in a manner rationally related to legitimate governmental objectives." *See Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981) (citations omitted). Weinfield's complaint is not that she is being treated differently from other similarly-situated persons. Instead, Weinfield argues that the Social Security offset violates the equal protection clause because it applies to all SBP annuitants, regardless of the source from which they derive their Social Security benefits. We disagree. The government makes substantial contributions to both the Social Security and .SBP programs, and it has determined that the offset is necessary to control the costs of these programs. The allocation of limited budgetary resources is a legitimate governmental objective. *See Id.* at 238–39, 101 S.Ct. at 1084–85. Accordingly, we conclude that the government's application of the Social Security offset to Weinfield is rationally related to a legitimate governmental objective and does not violate her constitutional rights. We find no error in the district court's summary judgment denying Weinfield's constitutional claims.

The district court's judgment is **AFFIRMED.**

---

4. The district court held that the terms of the contract were defined by the statute, which authorized the offset.